# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MICHAEL GRAY,                                     )
                                                  )
        Appellant-Defendant,                      )
                                                  )
        vs.                                       )        No. 49A02-1205-CR-352
                                                  )
STATE OF INDIANA,                                 )
                                                  )
        Appellee-Plaintiff.                       )

## APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Shatrese M. Flowers, Master Commissioner
Cause No. 49G14-1110-FD-71637

**February 11, 2013**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Michael Gray was convicted of Class D felony possession of cocaine and received a four-year sentence. On appeal, Gray contends that the trial court erred in refusing to allow him to play portions of an audio recording of a police officer's deposition for impeachment purposes. We find that the trial court did err in refusing to allow Gray to play a part of the audio recording that was inconsistent with the officer's testimony on direct examination, but this error was harmless. We affirm.

**Facts and Procedural History**

One afternoon in October 2011, Indianapolis Metropolitan Police Department Officer Christopher Morgan saw a gray Ford Crown Victoria speeding near the intersection of Terrance Avenue and Talbott Street. Officer Morgan initiated a traffic stop of the car, which had been traveling ten to twenty miles per-hour over the speed limit. When Officer Morgan approached the car, he observed a woman in the driver's seat and a male, Gray, in the passenger seat. Officer Morgan asked the woman for her driver's license. He also asked Gray for his identification. Officer Morgan noticed that Gray appeared very nervous and was making furtive gestures. Because Officer Morgan believed that Gray might have a weapon, he called for backup. Another officer arrived at the scene a few minutes later.

After discovering that the woman's driver's license was suspended and Gray did not have a valid driver's license, Officer Morgan determined that the car should be impounded. Before the tow truck arrived, Officer Morgan conducted an inventory search according to departmental policy and discovered a small white baggie in the passenger

doorframe. Officer Morgan believed that the substance inside the baggie was crack cocaine and asked Gray and the woman about the baggie. The woman said she did not know what was inside the baggie. Gray initially said he did not know what was going on. A short time later, Gray made a statement indicating that the cocaine did not belong to the driver; he was then arrested. Subsequent chemical testing revealed that the baggie contained approximately 2.5 grams of cocaine.

The State charged Gray with Class D felony possession of cocaine and a habitual substance-offender enhancement. Gray's jury trial began in March 2012. At trial, Officer Morgan testified about the traffic stop and his discovery of the cocaine. On direct examination, Officer Morgan testified that when asked about the cocaine at the scene, Gray first said he did not know what was going on, but he later said "no [the cocaine] is not hers," referring to the driver. Tr. p. 34. On cross-examination, defense counsel disputed Officer Morgan's testimony, arguing that Gray had never said that the cocaine did not belong to the driver, but had instead made a very different statement—that he did not want to blame the driver for the cocaine. The following exchange occurred:

> Q      Now Officer Morgan, while at the scene Michael Gray did in fact tell you that [the cocaine] wasn't his, correct?
>
> A      I don't recall him using those exact words.
>
> Q      Again, did Michael Gray tell you that he didn't want to blame the driver for the bag?
>
> A      He did make the statement ["]it wasn't hers[,"] so I don't recall him making another statement selling her bad [sic] but I do recall him saying it wasn't the driver's.
>
> Q      And that was – in those statements were [sic] because he was ignorant about the entire situation, is that correct?

A That's what he stated.

*Id.* at 38-39. Defense counsel then asked Officer Morgan if he remembered giving a deposition one month earlier, and the officer said he did. *Id.* Counsel then began playing an audio recording of Officer Morgan's deposition. The State immediately objected, and the trial court told defense counsel to stop playing the tape. The State argued that the tape was inadmissible, and the trial court agreed, saying: "[Y]ou can't just start playing the recording because I don't know what's on there. The State may know but I don't know what's on there. I don't know." *Id.* at 40. Defense counsel offered to let the trial court listen to the tape, telling the court he only intended to play the portion of the deposition in which Officer Morgan relayed Gray's statements about the cocaine. *Id.* at 40-41. But the trial court declined, saying:

> I would have to listen to the whole thing. You can ask [Officer Morgan] regarding if he said something specifically on that date. You haven't asked him that. You just said, "you recall giving a statement at my office," and gave the date. You can say, "did you say such and such on such and such a date" . . . but we don't know how he's going to respond. You haven't – you['ve] got to ask him did he say such and such.

*Id.* at 41. Defense counsel then resumed the line of questioning with Officer Morgan:

Q So [at your deposition] . . . I asked you about what you did after you found the cocaine.

A Correct.

Q And you stated that you talked with Michael Gray, correct?

A I believe so. I mean I don't have a transcript of the actual depo[sition] so if you're saying so, yes, I believe so.

Q And Michael Gray stated that [the cocaine] was not his?

4

A      Again, the statement he made was that he didn't understand what was going on.

Q      And [at your deposition] when I asked you about that you stated that Michael Gray also stated, "and he didn't want to blame her."

A      I don't recall.  If you say so then I'd have to take your word for it. He may have.

*Id.* at 42.

The jury found Gray guilty of Class D felony possession of cocaine.  He pled guilty to being a habitual substance-abuse offender and received a four-year sentence.  He now appeals.

## Discussion and Decision

On appeal, Gray argues that the trial court erred in refusing to allow him to play a portion of the audio recording of Officer Morgan's deposition for impeachment purposes. The issue before us is a narrow one.  We do not consider whether the prior inconsistent statement could have been introduced substantively through extrinsic evidence; we consider only Gray's ability to use a limited portion of the audio tape to call Officer Morgan's attention to his inconsistent testimony.

We review a trial court's decision regarding the admission of evidence for an abuse of discretion.  *Kimbrough v. State*, 911 N.E.2d 621, 631 (Ind. Ct. App. 2009) (citations omitted).  An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented.  *Id.*  We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*.  Even when a trial court errs in excluding evidence, we will not find reversible error where that error is

5

harmless; that is, where the error did not affect the substantial rights of a party. Ind. Trial Rule 61; *Appleton v. State*, 740 N.E.2d 122, 126 (Ind. 2001).

Indiana Evidence Rule 613 allows the use of a prior inconsistent statement to impeach a witness, and when used in this manner, the statement is not hearsay. *Jackson v. State*, 925 N.E.2d 369, 375 (Ind. 2010) (citing *Martin v. State*, 736 N.E.2d 1213, 1217 (Ind. 2000)). Our Supreme Court has stated that "[o]rdinarily, prior inconsistent statements are used to impeach, not as substantive evidence of the matter reported." *Young v. State*, 746 N.E.2d 920, 926 (Ind. 2001).[1]

On direct examination, Officer Morgan testified that Gray said the cocaine did not belong to the driver. *See* Tr. p. 34. But at his deposition, Officer Morgan testified that Gray said "he did not claim [the cocaine] was [the driver's];" in other words, Gray said he did not want to blame the driver.[2] The State argues that this is not an inconsistency and that the statements are "very similar." Appellee's Br. p. 7. We disagree. Definitively stating that something does not belong to someone is quite different from saying you are unwilling to say that something belongs to someone or that you are unwilling to blame that person. This is especially true in the situation here, where drugs

---

[1] A prior inconsistent statement may be admissible as substantive evidence, but only if the declarant testifies at trial and is subject to cross-examination, and the statement was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition. *Modesitt v. State*, 578 N.E.2d 649 (Ind. 1991); Ind. Evidence Rule 801(d). However, Gray did not attempt to use the tape as substantive evidence in this case.

[2] In its appellate brief, the State quotes Officer Morgan's deposition testimony: "I asked [Gray] if he used cocaine or if he knew about the drugs in the car. And of course he didn't know about it but he didn't want to claim that it was hers so we could (inaudible) so . . . ." Appellee's Br. p. 7 (ellipses in original). The State also provided a copy of the officer's deposition on a floppy disk. Because this Court's technology does not allow us to access the contents of floppy disks, we ask that appellate parties refrain from submitting materials on floppy disks in the future. Because we cannot access the floppy disk's contents, we rely on the State's recitation of Officer Morgan's deposition testimony.

were found and only two people were present. If Gray said the cocaine did not belong to the driver he would impliedly be saying that he knew who the drugs belonged to, and from this, the jury could infer that the drugs belonged to him.

Because there was an inconsistency in the officer's testimony, Gray contends that he should have been allowed to impeach Officer Morgan with his deposition testimony. We agree. Gray should have been permitted to play the specific portion of the tape that contained the inconsistent deposition testimony and give the officer an opportunity to explain the inconsistency. Ind. Evidence Rule 613(a); *see Appleton*, 740 N.E.2d at 125-26 ("Once [the witness] denied [the defendant's] involvement in the events, the State should have made [the witness] aware of specific portions of his testimony that were inconsistent . . . and given him an opportunity to explain those inconsistencies."). Allowing a defendant to reference specific portions of a prior inconsistent statement—rather than reading or playing a tape of the *entire* statement—avoids the danger of allowing the statement to come before the jury improperly as substantive evidence. *Appleton*, 740 N.E.2d at 126 (finding error where the State read, line-by-line, a witness's pretrial statement, saying that "the only purpose of such recitation [] would be to get the details of the . . . former statement before the jury as substantive evidence."). Here, we find that the trial court erred by excluding the tape of Officer Morgan's deposition.

Although we conclude that Gray was entitled to use a specific portion of the tape, he went about doing so in the wrong way. Gray played the tape without any notice to the court. The court was well within its discretion in refusing to allow Gray to play the tape when the court had no knowledge of its content. However, Gray explained that he

7

intended to use only a specific portion of the tape and made it available to the court. The court should have examined the portion of the tape Gray wished to use and determined whether it was inconsistent with Officer Morgan's testimony. Given that the portions Gray wished to play were in fact inconsistent with the officer's testimony, it was error to prevent Gray from playing the relevant portions of the tape.

We find the error harmless, however. Officer Morgan ultimately admitted that his testimony may have been inconsistent, making Gray's impeachment attempt complete— though jurors likely found this admission less persuasive than an audio recording of the officer's inconsistent statement. And the evidence adduced at trial strongly points to Gray's guilt: when police officers stopped the car Gray was riding in, Gray made furtive movements and appeared nervous. Gray was sitting in the passenger seat, and the cocaine was found in the passenger doorframe. Accordingly, we find no reversible error here.

Affirmed.

BAILEY, J., and BROWN, J., concur.