**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 31 2013, 5:36 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JUNE E. BULES**
Plymouth, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEVEN L. O'BRYANT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  75A03-1301-CR-3 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE STARKE CIRCUIT COURT
The Honorable John M. Marnocha, Special Judge
Cause No. 75C01-1208-FA-6

**October 31, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Steven L. O'Bryant challenges the validity of his convictions on four counts of Child Molesting,[1] a class A felony. O'Bryant asserts that his convictions must be reversed because the trial court erroneously allowed the State to present the victim's testimony via closed circuit television, that the jury was improperly instructed, that the State's information regarding one of the counts was defective, that the deputy prosecutor committed misconduct, and that the trial court erred in prohibiting O'Bryant from admitting part of a deposition of a witness into evidence for impeachment purposes that allegedly contained inconsistent statements from her trial testimony.

We conclude that O'Bryant failed to establish prejudice when the trial court permitted the victim to testify via closed circuit television, and that O'Bryant has waived the issues concerning the jury instructions, the alleged defective charging information, and the claim of prosecutorial misconduct. Finally, we conclude that the trial court did not err in excluding a portion of the witness's deposition testimony because there was no inconsistency that existed between it and her trial testimony. Thus, we affirm the judgment of the trial court.

FACTS

B.C., an eleven-year-old boy, lived in Starke County with his mother, S.C., her boyfriend, and some other relatives. Sometime in April 2012, S.C. permitted O'Bryant, a

---

[1] Ind. Code § 35-42-4-3(A)(1).

forty-three-year-old man, to move into the residence. S.C. and O'Bryant had known each other since she was a teenager.

At some point, O'Bryant wanted B.C. to engage in sexual activity with him. Although B.C. initially resisted, O'Bryant was persistent and eventually pressured B.C. until B.C. eventually "gave in" to these demands. Tr. p. 57. The State charged O'Bryant with four class A felony child molesting charges, alleging that between March 30, 2012 and May 12, 2012, O'Bryant engaged in the following sex acts with B.C.: 1) O'Bryant put his penis in B.C.'s anus; 2) O'Bryant placed a vibrating toothbrush in B.C.'s anus; 3) O'Bryant compelled B.C. to perform oral sex on him; and 4) O'Bryant forced B.C. to place his tongue inside his anus.

B.C. did not tell anyone about the molestations because O'Bryant threatened to "make him disappear from the face of the earth" if he did, and B.C. believed this threat. Tr. p. 57, 64. The last molestation occurred on May 12, 2012, and S.C. told O'Bryant to leave the next day because she felt like O'Bryant had been stalking her. As a result, S.C. put O'Bryant's belongings in trash bags and removed them from the residence.

In July, B.C. told his aunt, Penny Back, what O'Bryant had done to him. Back then contacted S.C. and the police were notified. Thereafter, B.C. was interviewed and given a physical examination.

The State filed the charges against O'Bryant on August 17, 2012. Thereafter, O'Bryant filed a motion for an early trial on September 11, 2012. On October 30, 2012, the State filed a request for a "protected person's hearing" and a motion to have B.C.

3

testify at trial via closed circuit television. Appellant's App. p. 25-28. O'Bryant objected, claiming that the State's motion was untimely. However, O'Bryant declined the trial court's offer to continue the trial because a continuance would conflict with his previously-filed motion for an early trial. As a result, B.C. testified via a closed circuit television at trial.

During Back's cross examination, O'Bryant attempted to have a portion of her deposition admitted at trial for the purpose of impeaching her with a statement that allegedly conflicted with her trial testimony. However, the trial court denied O'Bryant's request. The deputy prosecutor remarked during closing argument about a letter that O'Bryant had written to Back that had been admitted into evidence, and commented on O'Bryant's tattoos. O'Bryant did not object to either comment. O'Bryant also failed to object to the trial court's final instructions at trial. Finally, O'Bryant did not move to dismiss the charging information that he complains about for the first time on appeal.

Following the presentation of the evidence, a jury convicted O'Bryant on Counts I-III as charged, but acquitted him on Count IV. O'Bryant was subsequently sentenced to an aggregate term of 150 years of incarceration and he now appeals.

## I. Testimony via Closed Circuit Television

O'Bryant first contends that his convictions must be reversed because the trial court erred in permitting B.C. to testify via closed circuit television. Specifically, O'Bryant argues that the trial court should not have allowed B.C.'s testimony to be presented in this fashion because the State failed to give timely notice of its intent to have B.C. testify on closed circuit television.

In resolving this issue, we initially observe that the presentation of a witness's testimony by closed circuit television pursuant to the Protected Persons Act, Indiana Code section 35-37-4-8, is within the trial court's sound discretion. We will not reverse absent a showing of a manifest abuse of discretion that results in the denial of a fair trial. A.R.M. v. State, 968 N.E.2d 820, 824 (Ind. Ct. App. 2012). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Conley v. State, 972 N.E.2d 864, 871 (Ind. 2012).

Additionally, a trial court's evidentiary ruling will be sustained on appeal on any legal basis that is apparent in the record, even though it may not be the grounds that the trial court enunciated. Jester v. State, 724 N.E.2d 235, 240 (Ind. 2000). Generally, errors in the admission or exclusion of evidence are to be disregarded as harmless unless they affect the substantial rights of a party. Kirk v. State, 974 N.E.2d 1059, 1066 (Ind. Ct. App. 2012), trans. denied.

5

Under the Protected Persons Act, a prosecutor may, when certain criteria are present, request that the victim in a child molesting case testify via closed circuit television rather than in the court room in the defendant's presence. I.C. § 35-37-4-8(e)(3). The statute requires that the prosecuting attorney inform the defense of the State's intention to have the child victim testify via closed circuit television at least ten days before the trial.

On October 30, 2012, the prosecutor filed a request with the trial court for a protected persons hearing regarding B.C., as well as a request for B.C. to testify via closed circuit television. However, O'Bryant's jury trial was scheduled to begin on November 7, 2012. Thus, the State's request for B.C. to testify via closed circuit television was filed only eight days prior to trial.

At a pretrial hearing that was conducted on November 5, 2012, O'Bryant objected to the State's motion allowing B.C. to testify by closed circuit television solely on the ground that the State's notice was late. However, O'Bryant declined the offer to continue the trial because the continuance would conflict with his previously-filed early trial motion. At this juncture, O'Bryant argues that the trial court abused its discretion when it allowed B.C. to testify by way of the television only because the State failed to timely notify the defense its intent to have B.C. testify in this fashion. Appellant's Br. p. 11-15.

Relevant here is this Court's opinion in Broude v. State, where it was determined that the defendant was obligated to prove that he was prejudiced by the State's failure to

6

give timely notice of its intent to have the victim testify by closed circuit television. 956 N.E.2d 130, 134-35 (Ind. Ct. App. 2011), <u>trans. denied</u>.

Indiana Code section 35-37-4-8 provides that the State must give the defendant ten days notice that it intends to have the victim testify by closed circuit television. Hence, in this case, the trial court was only required to grant O'Bryant a two-day continuance of the trial because O'Bryant already had received an eight-day notice from the State regarding its intent.

More specifically, the record shows that O'Bryant filed his early trial request on September 11, 2012. And under Criminal Rule 4(B), O'Bryant's trial was to commence within seventy days of that date. Therefore, to comply with O'Bryant's early trial request, O'Bryant's trial had to begin no later than November 20, 2012. Hence, it appears that a two-day continuance would not have affected O'Bryant's right to an early trial. Nonetheless, the trial judge observed that if there was a continuance, it would have to be for nearly four weeks because other trials had been scheduled starting the week after O'Bryant's trial was to commence. As a result, the State's late notice would have only have resulted in a minor conflict with O'Bryant's early trial right because the trial would not be held until the first week in December, which was approximately thirteen days past the November 20 date.

Even more compelling, O'Bryant did not object at the pretrial hearing, or at any time thereafter, claiming that the State's late notice would affect his ability to prepare for trial and defend the case. Indeed, an examination of the trial transcript demonstrates that

7

the late notice had no adverse consequences on O'Bryant's preparation of his defense and his ability to exercise his confrontation and cross-examination rights. That said, because O'Bryant makes no claim on appeal that he sustained any prejudice that resulted from the State's late filing of the notice under the Protected Persons Statute, we conclude that the trial court did not abuse its discretion in permitting B.C. to testify by way of closed circuit television.

## II.  Jury Instructions

O'Bryant next claims that the trial court improperly instructed the jury as to what it should do if the State failed to prove that the charged offenses were committed beyond a reasonable doubt.  Although O'Bryant did not object to the instructions at trial, he claims that fundamental error occurred.

O'Bryant's complaint centers around the instructions regarding the elements of the crimes that included the following language:  "If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty.  If the State failed to prove each of these elements beyond a reasonable doubt, you may find the Defendant guilty of . . . ."
Appellant's App. p. 44-47.

Although there appears to be no issue with regard to the first sentence quoted above, it is readily apparent that the second sentence is erroneous.  However, O'Bryant did not object at trial to the jury instructions.  Thus, his claim is waived.  Baker v. State, 948 N.E.2d 1169, 1178 (Ind. 2011).

8

In an effort to circumvent waiver, O'Bryant contends that the above instruction amounted to fundamental error. To be considered "fundamental," the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and "thereby depriving the defendant of fundamental due process." Id. at 1178. In other words, the error must be so prejudicial to the defendant's rights as to make a fair trial impossible. Id.

In considering O'Bryant's claim of fundamental error with regard to the above instruction, we examine the allegedly erroneous instructions in the context of all of the relevant information given to the jury, including other instructions. Munford v. State, 923 N.E.2d 11, 14 (Ind. Ct. App. 2010). Where a consideration of such information as a whole establishes that the instructions did not mislead the jury as to a correct understanding of the law, there is no due process violation and consequently no fundamental error. Dickenson v. State, 835 N.E.2d 542, 549 (Ind. Ct. App. 2005).

Here, it is apparent that the second sentence in the instruction was mistyped because it should have read that "If the State did prove each of these elements beyond a reasonable doubt, you may find the defendant guilty of [the offense of] . . . ." Appellant's App. p. 20-23. However, while the erroneous sentence was submitted to the jury, other instructions that the trial court gave provided the jury with the correct information, including O'Bryant's presumed innocence, that it was the State's burden to prove all of the elements of the charged offenses beyond a reasonable doubt, and that if the jury had a

reasonable doubt it should find O'Bryant not guilty. Appellant's App. p. 13, 34, 38, 42. The trial court also instructed the jury to consider the instructions as a whole.

When considering the above, it is apparent that the jury was sufficiently apprised that if the State failed to prove all of the elements of the offenses beyond a reasonable doubt, then the jury could not find O'Bryant guilty. Therefore, under these circumstances, the improper sentence in the instruction quoted above did not amount to fundamental error. See Munford (holding that although erroneous information was set forth in one of the jury instructions, fundamental error did not result and reversal was not required because correct statements of the law were contained in other instructions). As a result, O'Bryant has waived the issue and he does not prevail on his fundamental error claim.

### III. Defect—Charging Information

O'Bryant next claims that his conviction for child molesting alleged in Count III must be vacated because the charging information failed to allege sufficient facts that constituted deviate sexual conduct, which is an essential element of the crime. O'Bryant also claims that his conviction on this Count must be vacated because the final instruction with regard to this offense "directs the jury to return a verdict of guilty upon the finding of facts that do not constitute an essential element of the crime charged." Appellant's Br. p. 21.

Notwithstanding O'Bryant's claims, we note that he did not challenge the sufficiency of the charging information at the trial court level. More particularly,

O'Bryant did not file a motion to dismiss this charge prior to trial. Thus, O'Bryant has also waived this issue. Edelen v. State, 947 N.E.2d 1024, 1032-33 (Ind. Ct. App. 2011).

However, once again, in an effort to circumvent waiver, O'Bryant contends that the alleged defective charging information amounted to fundamental error. The purpose of a charging information is to provide the defendant with notice of the crime for which he or she is charged so a defense can be prepared. Gilliland v. State, 979 N.E.2d 1049, 1060 (Ind. Ct. App. 2012). When the charging information enables the defendant, the court, and the jury to determine the crime for which the conviction is sought, the charging information satisfies due process requirements. Gaby v. State, 949 N.W.2d 870, 876 (Ind. Ct. App. 2011). Finally, we note that the State is not required to include detailed factual allegations in the charging information. Gilliland, 979 N.E.2d at 1061.

In this case, the charging information with regard to Count III provided that

> To convict the Defendant of Count III, . . . the State must have proven the following elements beyond a reasonable doubt:
>
> 1. The Defendant, . . .
> 2. Knowingly or intentionally
> 3. Performed or submitted to deviate sexual conduct with [B.C.], that is: Steven L. O'Bryant had [B.C.] place his mouth and tongue onto Steven L. O'Bryant's anus; when
> 4. [B.C.] was under fourteen (14) years of age; and
> 5. Steven L. O'Bryant was at least twenty-one (21) years of age.

Appellant's App. p. 34.

Child molesting is a class A felony where the act involves a child under fourteen years of age and a defendant who is at least twenty-one years of age and the act

11

committed is either sexual intercourse or deviate sexual conduct. Ind. Code § 35-42-4-3(a)(1). "Deviate sexual conduct" is defined as an act involving:

> (1) A sex organ of one person and the mouth or anus of another person; or
> (2) The penetration of the sex organ or anus of a person by an object.

I.C. § 35-41-1-9.

It is apparent that Count III as charged falls within subsection (2) of the statute quoted above, with the "object" being B.C.'s tongue. In our view, the charging information enabled O'Bryant to determine that he was charged with forcing B.C. to perform deviate sexual conduct by causing B.C. to use his tongue to penetrate O'Bryant's anus in violation of the statute. In short, we conclude that O'Bryant had sufficient notice regarding the crime of which he was charged.

We also note that the probable cause affidavit in this case, which was filed with the charging information, provided additional information that apprised O'Bryant of the crime under Count III. More particularly, the probable cause affidavit states that "[B.C.] described one time that O'Bryant made [B.C.] stick his tongue in his butt. [B.C.] stated that this made him feel weird." Appellant's App. p. 2.

When considering the charging information and probable cause affidavit, it is apparent that O'Bryant was sufficiently apprised that he was charged with committing child molesting when he engaged in sexual deviate conduct under section 35-41-1-9(2). Because O'Bryant had sufficient notice as to the offense charged in Count III, he cannot demonstrate fundamental error. Thus, O'Bryant does not prevail on this issue.

12

Finally, although O'Bryant also contends that the jury was erroneously instructed as to the elements with regard to this Count, he did not object to the instruction regarding the charge and does not claim that fundamental error occurred. As a result, the issue is waived. Curtis v. State, 948 N.E.2d 1143, 1148 (Ind. 2011).

## IV. Prosecutorial Misconduct

O'Bryant next contends that his convictions must be reversed because various comments that the deputy prosecutor made during closing argument rose to the level of fundamental error. Specifically, O'Bryant argues that even though he did not object, the deputy prosecutor's reference to a letter that O'Bryant wrote and mailed to Back prejudiced him and denied him the right to a fair trial. O'Bryant further alleges that the deputy prosecutor "completely misstated that evidence during closing argument." Appellant's Br. p. 22-23.

O'Bryant further maintains that the deputy prosecutor engaged in misconduct when she commented on his tattoos. O'Bryant claims that the deputy prosecutor made these remarks to incense the jury and erroneously portray him as a "tough guy." Id. at 24.

Once again, O'Bryant has waived the issue because he made no objection at trial and asserts that the deputy prosecutor's comments rose to the level of fundamental error. However, we cannot agree that fundamental error occurred because O'Bryant has failed to show that the prosecutor's comments—even assuming they rose to the level of prosecutorial misconduct—placed him in a position of "grave peril." Delarosa v. State, 938 N.E.2d 690, 696 (Ind. 2010). In the event that prosecutorial misconduct is

13

established, the gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, rather than on the degree of the impropriety of the misconduct. Id. The element of the harm necessary to establish fundamental error is not demonstrated by the fact that the defendant was convicted. Rather, it depends on whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which the defendant should have been entitled. Neville v. State, 976 N.E.2d 1252, 1259 (Ind. Ct. App. 2012), trans. denied.

We first note that the letter O'Bryant wrote to Back was relevant because he denied ever molesting B.C. O'Bryant argues that the deputy prosecutor was attempting to mislead the jury into believing that O'Bryant wrote the letter before he was ever arrested or charged with the offenses in this case. Nonetheless, because the prosecutor pointed to the date that O'Bryant had placed on the letter, she was arguing facts that were in evidence. Granted, even though the deputy prosecutor's argument may have been slightly misleading because she stated that O'Bryant had denied the molestations before he was accused of committing the acts, the fact remains that it was O'Bryant's letter. Moreover, the deputy prosecutor's remarks concerned only a brief reference to the letter that constituted only a minor part of her closing argument. In fact, it was B.C.'s testimony that formed the essence of the State's case, along with the testimony from his mother and aunt. The trial court also instructed the jury that counsel's arguments are not evidence.

14

As a result, even if the deputy prosecutor's comments were improper, O'Bryant has failed to show that such conduct amounted to fundamental error. See Suding v. State, 945 N.E.2d 731, 737 (Ind. Ct. App. 2011) (holding that in light of the evidence of the defendant's guilt, the prosecutor's fleeting comment about the defendant's criminal past did not constitute fundamental error). For all of these reasons, we conclude that O'Bryant has failed to demonstrate fundamental error that resulted from the deputy prosecutor's brief argument regarding the letter.

### B. Tattoos

In this case, O'Bryant admitted that his tattoos were relevant, at least for identification purposes. It is only improper for a prosecutor to comment on evidence that is not in the record. See Malloch v. State, 980 N.E.2d 887, 909 (Ind. Ct. App. 2012) (observing that a prosecutor must generally confine closing argument to comments based on the evidence presented at trial), trans. denied.

Here, it is apparent that the deputy prosecutor was attempting to convey a reasonable inference from the evidence that O'Bryant's tattoos would project to a young child the belief that O'Bryant was a rough and scary individual. Thus, the deputy prosecutor's comments about the tattoos assisted in explaining why B.C. was frightened of O'Bryant, particularly in light of O'Bryant's threats that he would make B.C. disappear "from the earth" if he ever told anyone about the molestations. Tr. p. 57, 59. Moreover, the fact that B.C. was frightened of O'Bryant explained why B.C. delayed reporting the molestations to various family members and others. Hence, we cannot say

that the deputy prosecutor's comments regarding O'Bryant's tattoos were improper. Thus, O'Bryant's fundamental error claim fails.

### V. Exclusion of Evidence Regarding Prior Inconsistent Statement

Finally, O'Bryant argues that the trial court erred in preventing him from admitting part of Back's deposition testimony into evidence. O'Bryant argues that he was attempting to establish that Back made inconsistent statements in her deposition that conflicted with her trial testimony and that B.C.'s admission that he had been molested when he was "three or four" was "necessary for an effective cross examination." Appellant's Br. p. 26. Thus, O'Bryant contends that the evidence should also have been admitted for impeachment purposes.

We initially observe that the admission or exclusion of evidence rests within the sound discretion of the trial court, and is reviewed for an abuse of discretion. Conley v. State, 972 N.E.2d 864, 871 (Ind. 2012). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Id. The trial court's evidentiary rulings will be sustained on appeal on any legal basis apparent in the record, even though they may not be the grounds that the trial court enunciated. Jester v. State, 724 N.E.2d 235, 240 (Ind. 2000). Finally, errors in the admission or exclusion of evidence are generally to be disregarded as harmless unless they affect the substantial rights of a party. Gray v. State, 982 N.E.2d 434, 437 (Ind. Ct. App. 2013).

16

In this case, O'Bryant argues that the trial court's exclusion of Back's deposition testimony prohibited him from exercising his constitutional right of cross-examination and denied him the ability to show that her testimony was not reliable and that she had "coached" B.C.'s testimony. Appellant's Br. p. 25-28.

Notwithstanding these claims, the portion of Back's deposition that O'Bryant sought for the trial court to admit did not establish a prior statement that was inconsistent with Back's testimony. More particularly, O'Bryant points out that Back testified at trial in response to defense counsel's questions that when B.C. initially told her about O'Bryant's actions, she told B.C. that he had been "molested." Tr. p. 206-07. However, the record shows that Back did not use that term. Rather, it was B.C. who actually stated that he had been "molested." Moreover, the portion of Back's deposition that O'Bryant sought to have admitted into evidence did not contain the term "molested." Appellant's App. p. 45-46.

During the deposition testimony, Back stated, "And I said, other than what happened to you when you were three or four, I said, has anybody else ever did that to you again?" Appellant's App. p. 45-46. Because O'Bryant failed to show that Back used the term "molested" when she was questioned, O'Bryant has not established that there was any discrepancy between Back's testimony at trial and her deposition testimony. As a result, the trial court did not abuse its discretion in prohibiting O'Bryant from using the deposition testimony for impeachment as a prior inconsistent statement.

## CONCLUSION

In light of our discussion above, we conclude that O'Bryant failed to establish that he was unfairly prejudiced when the trial court allowed B.C. to testify via closed circuit television, that O'Bryant has waived the issues regarding the trial court's final instructions that were read to the jury, the alleged defective charging information in Count III regarding the commission of sexual deviate conduct, and the claim of prosecutorial misconduct. Moreover, none of these contentions constituted fundamental error. Finally, we conclude that the trial court did not err in excluding Back's deposition testimony because there was no inconsistency with regard to that testimony and her testimony at trial. The judgment of the trial court is affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.